IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT MORRIS, R71372, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| WEXFORD HEALTH SOURCES, INC., TAYLOR, TARA, QUICK, WEAVER, JOHN/JANE DOE, ANTHONY WILLS, MARGARET MADOLE, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 23-cv-3781-RJD

# MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Robert Morris, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff presents claims about treatment he received for ear issues, as well as the discontinuation of certain ADA accommodations related to his hearing.

Plaintiff's Complaint (Doc. 1) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

In late 2019 while Plaintiff was housed at Stateville Correctional Center, a cockroach was discovered in his ear. (Doc. 1 at 23). Plaintiff alleges he suffered hearing loss related to this incident. Plaintiff was sent to an outside audiologist and around January of 2020 he was "designated and approved…and to be given; hard-of-hearing devices and equipment[.]" (Doc. 1 at 23). In August of 2021 Plaintiff transferred to Menard, at which time he alleges he began to encounter harassment and badgering from an un-named ADA specialist.

In January of 2023 Plaintiff saw Defendant Dr. Taylor for three-year follow-up testing of his ears. Dr. Taylor examined Plaintiff and ordered an ear flush. (Doc. 1 at 23). A non-party nurse performed an initial ear wash in February or March of 2023, and she informed Plaintiff that he may have a second follow-up. Subsequently, Defendant Tara, a nurse, performed a second ear wash in April of 2023. Plaintiff alleges the second ear wash was improper because Nurse Tara jammed the plastic syringe tool in both of his ears which caused immediate bleeding, pain, and more hearing loss. After the procedure Nurse Tara informed Plaintiff that he should not place a sick call slip about his ears because she was mad at him for making her perform an ear flush, a task she hated performing. (Doc. 1 at 24).

Plaintiff attempted to place two sick call slips within 24 hours of his second ear flush, but he got no response. (Doc. 1 at 24). At some point in April of 2023, Plaintiff saw Dr. Taylor again. Dr. Taylor observed abrasions in both of Plaintiff's ears that were not present during the previous

exam, and he indicated that he would record the abrasions as well as Plaintiff's self-report that Nurse Tara harmed him. Dr. Taylor also indicated that he would make a note that Plaintiff was suffering "more and more hearing loss." (Doc. 1 at 24). Despite observing the abrasions, Dr. Taylor proceeded to conduct his follow-up exam in a manner that caused Plaintiff excruciating pain and made him yell at the top of his lungs. Dr. Taylor repeatedly attempted to insert his medical tools into Plaintiff's ears to assess his need for hearing aids, regardless of Plaintiff's voiced discomfort. At some point in May of 2023, Dr. Taylor directed all IDOC and Wexford staff to remove Plaintiff from the ADA list and to confiscate his ADA electronics and devices. (Doc. 1 at 24-25).

Plaintiff protested the taking of his devices to ADA staff because he believed this act would "not service Plaintiff and his everyday need of his prison needs and necessities." (Doc. 1 at 25). Plaintiff went on to file multiple grievances about this issue. On one occasion Defendant Quick (a counselor) stopped by his cell and told him she "threw [his] shit away." On another occasion Defendant Weaver (a counselor) stated, "I heard about your lawsuits and all that other junk, all on my/our staff here. You're dead in my eyes." (Doc. 1 at 25). Plaintiff also alleges that he was denied the grievance box and that the Warden's office erroneously returned one of his grievances. Given his lack of success with grievances at the prison, in June of 2023 Plaintiff transmitted a grievance to the Administrative Review Board, which he alleges was also erroneously returned.

Plaintiff alleges that he has continued to suffer excruciating pain in both ears, and additional hearing loss has continued. (Doc. 1 at 25). Despite his deteriorating condition, medical staff has continued to deny him of his ADA rights. Plaintiff also tried to write Wexford Health Sources, Inc. about the loss of his ADA rights, but he has not received a response. (Doc. 1 at 26).

Plaintiff alleges violations of the First, Eighth, and Fourteenth Amendments, as well as medical malpractice and medical negligence. He seeks monetary compensation, and injunctive relief in a variety of forms. (Doc. 1 at 27).

In support of the Complaint, Plaintiff also included a letter to the Chief Judge of this District, and documents from two other matters he has filed before this Court. (Doc. 1 at 29-41). These exhibits do not appear immediately relevant to the allegations in this complaint, other than to the extent that Plaintiff perhaps means to imply the issues he discusses in this case are also somehow involved in a grand scheme of retaliation. There are no explicit retaliation allegations in the present lawsuit, so the Court will not discuss these documents further in relation to this case.

Based on the allegations in the Complaint, the Court will designate the following claims:

**Count 1:**   **Eighth Amendment claim against Dr. Taylor and Nurse Tara concerning their treatment of Plaintiff's ears during the ear flush and exams;**

**Count 2:**   **State law negligence or medical malpractice claim against Defendants Dr. Taylor and Nurse Tara for their conduct;**

**Count 3:**   **First or Eighth Amendment claim against Defendants Quick and Weaver for verbal remarks to Plaintiff about his needs;**

**Count 4:**   **ADA claim for confiscating and refusing to restore Plaintiff's assistive hearing devices;**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

**PRELIMINARY DISMISSALS**

Plaintiff named Wexford Health Sources, Inc., as a defendant, but his only allegations related to Wexford are that they either confiscated his ADA devices, or they have not responded to his letter about the confiscation of his devices. (Doc. 1 at 25-26). Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Plaintiff's factual allegations about the confiscation of his hearing devices, or about the non-response to his letter, do not in any way suggest that Wexford was involved in a violation of his constitutional rights by way of a policy, custom, or practice maintained by the corporation. Accordingly, any claim against Wexford is dismissed without prejudice as insufficient.

In the caption of the Complaint, Plaintiff also named a John/Jane Doe grievance officer and Margaret Madole (a member of the Administrative Review Board) as defendants, but the factual allegations in his complaint do not make any mention of the involvement that these people had in causing him harm. *See e.g., Black v. Lane*, 22 F.3d 1395, 1401 at n. 8 (7th Cir. 1994). Section 1983 liability relies upon personal involvement, so without any individualized mention, Plaintiff's claims against John/Jane Doe and Madole are dismissed without prejudice as insufficient.

Finally, Plaintiff named Anthony Wills (the Warden) in the case caption, but his only mention of Wills is a passing suggestion that the Warden's Office erroneously returned one of his grievances.  (Doc. 1 at 25).  The alleged mishandling of a grievance without participation in the underlying constitutional harm is insufficient to state a claim.  *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011) (prison grievance procedures are not mandated by the First Amendment, and do not automatically invoke Due Process protections, so the alleged mishandling of a grievance without more does not state a claim).  Accordingly, Wills is dismissed without prejudice because Plaintiff has failed to plead sufficient facts against him to state a claim.

## ANALYSIS

### Counts 1 and 2

To state a claim for deliberate indifference to a serious medical need, an inmate must show that (1) he suffered from an objectively serious medical condition; and (2) the defendant was deliberately indifferent to a risk of serious harm from that condition.  *Rasho v. Elyea*, 856 F.3d 469, 475-76 (7th Cir. 2017).  "Every claim by a prisoner that he has not received adequate medical treatment is not a violation of the Eighth Amendment."  *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016).  To determine if a medical professional acted with deliberate indifference, courts look to the provider's subjective state of mind.  *Id.* at 728.  An inmate need not show that a doctor explicitly intended harm or believed it would occur, but he must show more than negligence, medical malpractice, or even objective recklessness.  *Id.*

The Seventh Circuit has also acknowledged that there might be an Eighth Amendment claim that lies at the "intersection of deliberate indifference and pointless infliction of a psychological injury and deliberate indifference in medical care."  *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019).  Such a claim takes account of classic deliberate indifference principles, as

well as the bounds of cruel and unusual punishment that prohibit the "unnecessary and wanton infliction of pain" or acts "totally without penological justification." *Id.*

Plaintiff's allegations against Nurse Tara and Dr. Taylor may straddle the line between deliberate indifference and cruel and unusual punishment. Plaintiff alleges that Tara performed an ear flush in a fashion that was purposefully painful because she did not like performing ear flushes and was mad that Plaintiff needed an ear flush. He further claims that Nurse Tara's conduct caused abrasions in his ears that bled, were painful, and diminished his hearing. Reading these facts broadly, Defendant Tara may have caused a serious injury and then refused treatment for it, and she may also have acted in violation of the prohibition on cruel and unusual punishment. Plaintiff may proceed on Claim 1 against Nurse Tara.

Likewise, Plaintiff's allegations suggest that Dr. Taylor observed the injuries from the ear flush, and he proceeded to conduct an ear exam in a manner that inflicted pain. There is no indication that Dr. Taylor offered any treatment for the existing injuries from the ear wash, or that he offered any relief or treatment after he conducted his own painful exam. Dr. Taylor also seemingly disregarded Plaintiff's own expressions of discomfort during the exam. As with the allegations against Taylor, these allegations may fit either under deliberate indifference or cruel and unusual punishment, or both.

Plaintiff may also proceed for now on his medical negligence or malpractice claims against Defendants Dr. Taylor and Nurse Tara concerning their handling of his ear issues.

**Count 3**

Plaintiff alleges that Defendants Quick and Weaver, both counselors, should be held responsible for violating his rights because they either refused to accept his paper grievances about his hearing issues or they verbally harassed him and informed him they would not provide medical

assistance. As the Court stated above, there is no First Amendment right to access a grievance procedure, and the existence of a grievance procedure does not automatically invoke due process protections. *Owens*, 635 F.3d at 953-54. To the extent that Plaintiff alleges simply that Quick and Weaver denied him access to the grievance procedure on two discrete occasions, this is not enough to make out a claim.

However, Plaintiff also alleges that these two counselors made offensive or threatening remarks to him during the interactions he described. Plaintiff alleges that Quick told him during a single interaction that she threw his things away, though it is not clear what things he is referring to—be it a grievance, his ADA devices, or some other item. Plaintiff further alleges that on one occasion Weaver expressed disdain for him and stated he was "dead to [him]."

Verbal harassment generally does not rise to the level of a constitutional violation, though some harassment may be serious enough to constitute cruel and unusual punishment. *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (finding that verbal sexual harassment, accompanied by suggestive gestures, that created a risk both from the harasser and fellow inmates, was sufficient to proceed beyond initial review); *Brand v. Oglesby*, 2021 WL 4262447 at *1 (S.D. Ill. 2021) (finding a claim insufficient where plaintiff alleged that a guard ran into his cell, verbally threatened him, and indicated he would deploy pepper spray if plaintiff moved). Some threats may rise to the level of cruel and unusual punishment. *Dobbey v. Ill. Dept. of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009). The Seventh Circuit held in *Lisle* that the "Eighth Amendment also protects psychologically vulnerable inmates against psychological pain deliberately inflicted by correctional officers[.]" *Lisle*, 933 F.3d at 718. The harassment in *Lisle* was a nurse allegedly taunting a suicidal inmate and encouraging him to commit suicide while she was assigned to monitor him during a suicide watch, conduct which has more of a shock factor that what Plaintiff

has alleged. While the Court does not endorse behavior like what Plaintiff describes from Quick and Weaver, it also is not persuaded that their comments on a single occasion rose to the level of an Eighth Amendment violation. If Plaintiff has more details about these interactions or other interactions with these individuals, he may certainly present that information in an amended complaint. For now, the Court finds that the allegations against Weaver and Quick are insufficient to state a plausible constitutional claim, so Count 3 is dismissed without prejudice.

**Count 4**

Plaintiff also seeks to bring an ADA claim related to the confiscation of his ADA assistive devices, and his removal from the prison's ADA list. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Failure to make reasonable accommodations to ensure participation in the public entity's programs or services by a person with a disability qualifies as "discrimination." 42 U.S.C. § 12112(b)(5)(A); *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). In the prison context, a plaintiff can make out a prima facie case of discrimination under the ADA by showing: (1) he is a qualified person; (2) with a disability; (3) the Department of Corrections denied him access to a program or activity because of his disability or otherwise subjected him to discrimination; and (4) the denial or discrimination was by reason of his disability. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Access to showers, meals, and toilet facilities is considered a "program or activity" within the meaning of the ADA. *Id.* at 672 (noting that inmate access to showers and meals is a program or activity).

Plaintiff's allegations regarding his need for an ADA present a close call, but reading the Complaint broadly, Plaintiff may proceed subject to a few limitations. He claims that the confiscation of his ADA devices "would not service [him] and his everyday need of his prison needs and necessities." (Doc. 1 at 25). He also adds at the end of the complaint that after the second ear flush, he has excruciating pain in his ears and additional hearing loss has continued. The pain itself appears to be a by-product solely of the second ear wash and does not necessarily seem to be something that necessitates an ADA accommodation as opposed to more immediate and short-term treatment. *See e.g., Velez v. Brown*, 2020 WL 1820130 at * 3 (S.D. Ind. Apr. 9, 2020) (an intermittent or episodic injury like a fracture is not a disability under the ADA). By contrast, Plaintiff alleges that after the ear flush additional hearing loss has continued. Hearing loss or the complete inability to hear *could* be an issue that warrants an ADA accommodation, so the Court will allow Plaintiff to proceed under the ADA on the theory his hearing loss has not been accommodated. Although Plaintiff was not specific about how his hearing loss impairs his ability to participate in prison life, the Court will assume in his favor for now that his daily life is impacted.

The proper defendant for an ADA claim is the Illinois Department of Corrections, or its Director, so the Court will add the Illinois Department of Corrections as a defendant in this case for Claim 4.

However, it is also worth noting that an inmate cannot pursue an ADA claim based on allegedly inadequate medical treatment. *See e.g., Johnson v. Redmond*, 2017 WL 6813706 at *2 (N.D. Ill. 2017) (collecting cases and finding that a pretrial detainee failed to state an ADA claim related to the denial of prescription sunglasses because his factual allegations related to inadequate medical treatment, and not discrimination based on a disability). Here, Plaintiff repeatedly refers to the incidents in his complaint as medical malpractice, negligence, or deliberate indifference, all

of which are instances of alleged inadequate medical treatment, rather than discrimination based on his hearing impairment. To the extent Plaintiff seeks to proceed under the ADA for malpractice or the denial of specific medical treatment, such a claim would fail.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** at this time without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). In determining whether to recruit counsel, the Court considers two factors— whether Plaintiff has made reasonable attempts to recruit his own counsel; and whether he is competent to represent his own interests. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff alleges that he attempted to contact counsel both in his motion for counsel and in his complaint. (Doc. 1 at 26-27; Doc. 3 at 1).

Although Plaintiff sought the assistance of counsel on his own, and he describes concerns about his ability to pursue this matter on his own, his pleading is sufficient to proceed on the claims set forth above. Plaintiff's initial pleading suggests that he is able to proceed in these early stages of litigation. *See Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010); *Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel...cannot be gauged."). No one has been served in this case, and a discovery schedule has not been entered. Although the motion is denied at this juncture, Plaintiff may renew his request for counsel if necessary, later in the litigation.

### MOTION TO COMPEL

At the time he filed this case, Plaintiff also filed a Motion to Compel (Doc. 4) wherein he asked the Court to request his trust fund statement.  His trust fund statement has been submitted, and he has been assessed an initial partial fee of $15.00 (Doc. 9), so the Motion to Compel (Doc. 4) is **DENIED** as **MOOT**.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Claims 1 and 2** of the Complaint (Doc. 1) survive initial screening as described above against Dr. Taylor and Nurse Tara, and **Claim 4** may proceed against the Illinois Department of Corrections.  The Clerk of Court is **DIRECTED** to **ADD** the Illinois Department of Corrections as a Defendant in this matter.

By contrast, the Court finds that Plaintiff failed to state a claim against Defendants Wexford Health Sources, Inc., Anthony Wills, John/Jane Doe, Margaret Madole, Quick and Weaver, and the Clerk of Court is **DIRECTED** to **TERMINATE** these defendants.

The Clerk of Court is **DIRECTED** to prepare for Dr. Taylor, Nurse Tara, and the Illinois Department of Corrections: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the

Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **<u>Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.</u>**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** as explained above.  Plaintiff's Motion to Compel (Doc. 4) is **DENIED** as **MOOT**.

**IT IS SO ORDERED.**

Dated: January 22, 2024

/s/ Reona J. Daly
Reona J. Daly
United States Magistrate Judge

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.