IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROBERT MORRIS, R71372,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | Case No. 23-cv-3781-DWD |
| **DR. TAYLOR,** ) | |
| **TARA CHADDERTON,** ) | |
| **IDOC,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Robert Morris, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Menard Correctional Center (Menard). Plaintiff alleges that the Defendants violated his rights by injuring his ear during multiple appointments, refusing treatment for the injuries, and depriving him of needed hearing-related accommodations. Defendants Chadderton and IDOC have moved for summary judgment on the exhaustion of administrative remedies (Doc. 49), Defendant Taylor has filed a notice expressing his intent to join that motion (Doc. 62), and he has also Moved to Dismiss (Doc. 45) a state law claim. Plaintiff has responded to the Motion for Summary Judgment (Docs. 60, 63), and Defendants Chadderton and IDOC have replied (Doc. 62). For reasons explained in this Order, Defendant Taylor's Motion to Dismiss must be denied, and the Motion for Summary Judgment must be denied as to all Defendants

because there is a genuine dispute of fact about if the grievance process was available to Plaintiff and/or if he attempted to file additional grievances that got lost.

## BACKGROUND

Plaintiff's complaint was signed, but not dated, it was received by the Court for filing on November 27, 2023.  (Doc. 1 at 27; Docket entry 1).   Upon initial review of the complaint, Plaintiff was allowed to proceed on the following claims:

> Claim 1: Eighth Amendment deliberate indifference claim against Dr. Taylor and Nurse Tara concerning their treatment of Plaintiff's ears during ear flush and exams;
>
> Claim 2: State law negligence or medical malpractice claim against Defendants Dr. Taylor and Nurse Tara for their conduct;
>
> Claim 4: ADA claim for confiscating and refusing to restore Plaintiff's assistive hearing devices.

(Doc. 13 at 4).  Other claims against additional defendants were dismissed as insufficiently pled.  (*Id.*).

The parties agree that there is just one officially documented grievance that bears some relevance to the claims in this case that was submitted at Menard—grievance 217-4-23.  They also agree there are two relevant grievances that Plaintiff submitted directly to the ARB.  Additionally, Plaintiff contends he attempted to file other grievances to no avail.

## FINDINGS OF FACT

Grievance 217-4-23 was submitted by Plaintiff on April 14, 2023.  The copy of the original handwritten grievance tendered by the Defendants is largely illegible because the page is copied in such a fashion that part of the text is outside of the frame.  (Doc. 50-

2 at 1-2). A responsive memorandum from a healthcare official summarizes the grievance at length. (Doc. 50-2 at 3). The grievance concerned numerous medical conditions, and the memorandum provided updates on care rendered. Relevant to this lawsuit, the memorandum stated, "the patient also reports staff misconduct related to his ears being flushed on 4/14/23. Per the medical record documentation, the patient did have his ears flushed on 4/14/23 by Nurse Tara." Reviewing the original grievance, enough is also legible to determine that in the paragraph concerning the ear flush, Plaintiff also mentioned Dr. Taylor. (Doc. 50-2 at 2). Plaintiff also checked the box on the grievance form seeking redress for an ADA issue. (Doc. 50-2 at 1). The Defendants contend in their statement of material facts that the grievance was "responded to" on December 26, 2023, though they did not explain in their summary judgment brief when Plaintiff actually received it. (Doc. 50 at ¶ 3). It appears that this responsive memorandum was from the first level of grievance review, the counselor's review, because it is not accompanied by the grievance officer's review form, and the front page of the original handwritten grievance contains a notation from the counselor to see the attached healthcare memo. Defendants contend that Plaintiff has not appealed this grievance to the Administrative Review Board.[1]

In addition to the April 2023 grievance, the grievance records include a June 13, 2023, grievance that discusses Plaintiff's ear issues and the Defendants' involvement in

---

[1] It is unclear if this statement is accurate. The ARB grievance log cited to support this statement only reflects appeals through January of 2024. The internal grievance log from Menard, submitted in support of the reply brief, indicates that as of January 2024, the grievance was still awaiting second level review by prison officials at Menard. (Doc. 61-1). There is no indication if prison officials at Menard have actually completed their review as of the filing of the briefs in this case.

great detail. (Doc. 50-1 at 9-10). The grievance was submitted directly to the ARB along with a letter wherein the sender indicated that they submitted the grievance to the ARB on Plaintiff's behalf because Plaintiff had been denied the grievance box. (Doc. 50-1 at 8). In this grievance, Plaintiff stated that he had tried to file at least two additional grievances at Menard about these issues in May of 2023, but he had been entirely unable to get a response.[2] (Doc. 50-1 at 10). On June 26, 2023, the ARB returned the grievance with a form indicating the appeal was deficient because it lacked copies of the original grievance and the grievance officer's response, but the box soliciting resubmission of those materials was not checked. (Doc. 50-1 at 7). The records also include a letter dated July 2, 2023, and stamped received by the ARB on July 20, 2023. In the letter, Plaintiff again presented his ear issues concerning the named defendants and indicated he had been unable to get any response to correspondence and grievances about his issues at the prison. (Doc. 50-1 at 6). Defendants contend that the ARB had not responded to the letter at the time the underlying complaint was filed in this case.[3] (Doc. 50 at ¶ 11).

---

[2] The Defendants posit in their statement of material facts that there is no record of this grievance outside of the ARB's log. (Doc. 50 at ¶ 5). To support this statement, they cite Plaintiff's cumulative counseling summary. Although the Court is familiar with the use of the cumulative counseling summary from other Pavey proceedings, in this summary judgment brief the Defendants provide no context for this document or how it can be used to prove a statement such as the one made in their statement of material facts. If they intend to rely on a document like this to establish material facts, they need to provide a supporting explanation about the basics like how the document is maintained, who inputs information, and why the document is sufficient to prove that there is no record at Menard of a particular grievance being submitted. Without context, ¶ 5 of the statement of material facts will not be treated as properly established for purposes of this motion for summary judgment.

[3] The Defendants cite to the ARB grievance log to support the contention that the ARB had not responded to the letter stamped as received on July 20, 2023, by the time this complaint was filed, but the evidence does not support that statement. The ARB grievance log contains no mention whatsoever of the July 20, 2023, letter from Plaintiff to the ARB, and the record contains no indication that the ARB did or did not respond. By contrast, the ARB grievance log did memorialize the June 2023 grievance.

Plaintiff alleges in his signed response brief that he "tried to file several grievances, however only one grievance surfaced about the April 2023 ADA issue." (Doc. 60 at 2). Plaintiff further explains that no one ever spoke to him about the grievance, so he tried to take the next step by directly contacting the ARB for an answer. Plaintiff's exhibits to his response are excerpts from the Defendants' brief and evidence.

In reply, the Defendants submitted an excerpt of a grievance log maintained at Menard. (Doc. 61-1). It purports to show that Plaintiff's April 17, 2023, grievance was returned to Plaintiff from the first level review on January 3, 2024, and that it was received for second level processing by the grievance office on January 19, 2024. (Doc. 61-1 at 4). It also indicates a counseling note was made by the grievance office on January 19, 2024. (Doc. 61-1 at 5). It contains no disposition, and no date when the CAO signed the grievance. (Doc. 61-1 at 6).

## Conclusions of Law

### A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving part." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear

the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. However, "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting," then the grievance procedure becomes unavailable. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedures).

As an inmate in the Illinois Department of Corrections (IDOC), Plaintiff must follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Under IDOC's procedure, an inmate initiates a grievance with his counselor, and he may then submit his grievance to a grievance officer at his facility, and to the CAO at his facility. If an inmate is unsatisfied with the outcome at the facility he must appeal to the ARB within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). The Illinois Administrative Code provides that the grievance officer shall "when reasonably feasible under the circumstances" make recommendations to the prison's Chief Administrative Officer (CAO) on a grievance within two months of receipt. 20 Ill. Admin. Code § 504.830.

Although courts have not treated the 60-day timeframe in § 504.830 as a firm deadline that allows an inmate with a non-response to proceed immediately to a lawsuit, courts have suggested that if an inmate has no clue if or when a response might come, then the process may become obscure or unavailable.  *See Reid v. Balota*, 962 F.3d 325, 331 (7th Cir. 2020) (finding that an inmate who never got a response to a standard grievance, and who got two unhelpful responses from the ARB that did not indicate if anyone was investigating, had run into an administrative process that was unavailable to him); *compare with Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004) (holding that the passage of the 60-day aspirational timeline without a response did not automatically open the avenue for a lawsuit if the prison was still investigating a grievance).  In *Reid*, an inmate alleged an assault by a prison staff member and simultaneously filed an emergency and standard grievance.  The Warden deemed the emergency grievance a non-emergency.  The prison responded to the standard grievance with an indication the matter had been referred for internal investigation, but it never provided a formal ruling on the grievance.  Plaintiff tried to go to the ARB, but they responded that he needed a counselor's rejection and grievance officer/CAO rejection, without checking the box to invite the submission of those materials.  Plaintiff then tried to inquire via emergency grievance about the non-return of his standard grievance, but the CAO denied emergency status, and the ARB again rejected the appeal for lack of underlying documents with no indication of what Plaintiff could do to return for a valid merits consideration of his appeal.  Against this backdrop, the Seventh Circuit found that the process was obfuscated, that Plaintiff's

standard grievance never got a response, that he had no reason to believe any grievances were being investigated further, and that the process was thus unavailable.

The "failure to exhaust is an affirmative defense, and as such the burden of proof is on the defendants to establish that administrative remedies were not exhausted, and not on the prisoner to show that administrative remedies were unavailable." *Smallwood v. Williams,* 59 F.4th 306, 315 (7th Cir. 2023) *citing Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022); *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016). "In short, if there are contested facts as to whether a prison grievance process was available (keeping in mind that the burden of proof is on the defendants to show a lack of exhaustion), summary judgment is not appropriate and this gateway factual determination must be made in a Pavey hearing." *Smallwood*, 59 F.4th at 315.

### B. Analysis

The Defendants argue that summary judgment should be granted in their favor because Plaintiff did not properly file and fully exhaust any relevant grievance before filing this lawsuit. Plaintiff has countered these claims with his signed statements in his response brief, and by pointing to the same grievance records the Defendants tendered. In reply, Defendants argue that Plaintiff's response should be rejected for failing to comply with the formatting requirements for a response set forth in the Court's Local Rule 56.1. The Local Rules provide that briefs in support of or in opposition to a motion for summary judgment must include a statement of material facts and a response to the statement of material facts, and that these statements must be supported by citations to explicit evidence in the record. LR 56.1(a)-(d). Thus, they argue their statement of facts

should be deemed admitted, and Plaintiff's facts should not be considered or should be stricken given his lack of compliance with the formatting rules.

The Court rejects the Defendants' contentions for two reasons. First, the Defendants argue for an overly formulaic reading of the Rules that ignores Plaintiff's status as a pro se litigant and disregards the fact that an inmate's sworn statement that he has done something can be sufficient to create a genuine dispute of fact for summary judgment. *See e.g.*, *Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) (a genuine factual dispute may necessitate a hearing where a prison insists an inmate never filed a grievance, and an inmate counters that he did even if he lacks documentation to back up his claim, because this is the exact sort of swearing contest where the Court must resolve credibility); *Smith v. Foster*, 2024 WL 4988362 at * 2 (7th Cir. Dec. 5, 2024) (finding that an inmate's sworn statement that he submitted a grievance was sufficient to create a genuine dispute of fact about exhaustion); *see also* Lynch v. Corizon, 764 Fed. App'x 552 (7th Cir. 2019); *Gil v. Wilson*, 2012 WL 6509074 at * 1 (N.D. Ind. Dec. 11, 2012) (if party with personal knowledge makes specific factual assertions in a pleading and verifies those under the penalty of perjury, the factual assertions may be considered as evidence just as if contained in an affidavit). Though Plaintiff may not have followed the precise procedures set forth in the Local Rules, he complied with the spirit of the rules by filing responsive information and arguments.

Second, and more importantly, the Court finds that the Defendants statement of material facts is not supported by adequate evidence. As the moving party, Defendants bear the burden of showing that there is no genuine issue of fact the precludes summary

judgment in their favor, by citing particular parts of the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1)(A), (B). Failure to do so in a manner that would be admissible evidence provides grounds for objection to or exclusion of the proposed fact(s) from consideration on summary judgment. Fed. R. Civ. P. 56 (c)(2), (3). Here, the Defendants have submitted documents that pertain to the exhaustion of administrative remedies, but they have not submitted any foundational affidavit, declaration, subpoena or other document that would substantiate the admissibility of this evidence. They submitted documents the Court is familiar with from other exhaustion proceedings, such as the Administrative Review Board's (ARB) grievance records, and the prison's cumulative counseling summary, but they did not submit anything attesting to the veracity of these records, nor did they submit anything to give foundational context about what the records might demonstrate. The Local Rules and Federal Rules provide that the Court could either strike the motion (Local Rule 56.1(h)) or it could require the movant to properly support each fact (Fed. R. Civ. P. 56(e)(1)). Here, given that even a properly supported motion would need a hearing in the face of Plaintiff's sworn statements, the Court will deny the motion for summary judgment, but it will allow the Defendants to request a hearing if they want one, at which time they will be expected to introduce any and all evidence needed to support their claims concerning exhaustion with proper support.

Turning to the merits of exhaustion, even if the Court treated all of Defendants statement of material facts as admitted, those facts do not extinguish disputes about the

availability of the grievance process and/or if Plaintiff attempted to submit additional grievances in April or May of 2023. The burden was on the Defendants to establish availability, and as the Court will explain, they have not credibly established it here. Even if they had established availability, Plaintiff has also contended via his signed response that he submitted additional grievances that were lost, which also creates a genuine dispute of fact about if he did everything he could to exhaust his remedies.

As for grievance 217-4-23, the Defendants argue that although this grievance mentions them and their conduct, it was insufficient for exhaustion in this case because Plaintiff did not fully exhaust the grievance before filing this lawsuit. They argue in their statement of material facts that Plaintiff has not appealed this grievance to the ARB, but that would obviously be an impossibility given that their own records submitted with their reply brief appear to demonstrate that this grievance is still pending second level review at the prison (at this point nearly two years from when Plaintiff initially filed it). (Doc. 62-1). They also argue that although the grievance was pending at the prison beyond the aspirational timeframe of 60-days set forth in § 504.830, this did not give him an excuse to file his lawsuit before waiting for a reply. This scenario highlights an important defect in the grievance procedure set forth in the Illinois Administrative Code that is implemented at Menard. The process gives an aspirational timeframe of 60 days to await a grievance officer response but is entirely silent about what an inmate should do if he is stuck waiting for a response long beyond the 60 days and does not know how

to secure assistance. The process has no formal codified mechanism for an inmate to inquire about the status of a pending grievance.[4]

Plaintiff in this case claims that his April 17, 2023, grievance and other grievances about the same issues got no response at the prison, so in June and July of 2023 he attempted to go to the ARB directly for a response. On the first occasion, the ARB responded with a form that indicated he needed the prison level responses to appeal. This response ignored the substance of his appeal to them, which explained that he had been waiting and was unable to get a local response. In the ARB's June 2023 response, they checked boxes indicating his grievance was defective but did not check the box inviting him to resubmit an appeal with proper documents enclosed. This is the exact defect by the ARB that the Seventh Circuit highlighted as problematic in *Reid v. Balota*.

Undeterred, Plaintiff tried a second time to explain his plight to the ARB in July of 2023, and despite that correspondence being filed stamped as received by the ARB, there is no indication that they ever logged it or provided any response. This left Plaintiff in a situation much like *Reid*, where he had tried multiple avenues to grieve his issue and was not getting any answer. The Defendants have not provided any evidence with their motion suggesting what Plaintiff could have done after his April, June and July efforts to

---

[4] The Court knows anecdotally from many other Pavey proceedings that there are informal processes for inmates to inquire about the status of lost grievances, but it would be significantly more effective if these procedures were either incorporated into the Illinois Administrative Code, or at least into the prison's inmate handbook. *See e.g.*, *Reid v. Balota*, 962 F.3d 325, 330 (7th Cir. 2020) ("Grievance procedures must be transparent. This helps everyone: the institution is better able to investigate and resolve grievances if they are presented under a well-understood system, and inmates are better able to comply with institutional expectations if the rules are clear.") *citing Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828 (7th Cir. 2020). In this case, Defendants have not provided any explanation or evidence about any such process that Plaintiff could have used to follow up on missing documents he alleges went missing.

get answers from the prison and the ARB.  Plaintiff ultimately waited from April 2023 until late-November 2023 before filing this lawsuit, thus he allowed more than 200 days to transpire.  While it's true that the prison later sent his grievance back in early January of 2024 from the first level of review, it now appears that it has been stalled out an additional 13 months at the prison with no response.  The Defendants argue without support in their reply brief that as a medical and ADA grievance it took time to gather responsive information from relevant personnel at the prison, but this does not necessarily excuse such a lengthy delay for the grievance response, nor does it demonstrate Plaintiff had any reason to believe in the meantime that his grievance was still pending.  Given this analysis, the Court finds that it cannot grant summary judgment on the documentary evidence and briefs alone because there is a genuine dispute about if the process was available for the April 17, 2023, grievance, and if Plaintiff genuinely attempted to submit any other grievances in April or May of 2023 that may have exhausted his claims.

As for Defendant Taylor's Motion to Dismiss, Taylor argues that the medical malpractice claim against him should be dismissed because Plaintiff failed to include a certificate of merit for this claim with his complaint, as is required under Illinois law.  (Doc. 46).  This argument lacks merit.  Pursuant to federal procedural rules, a complaint filed in federal court cannot be dismissed simply because the § 5/2-622 affidavit and report are missing.  *Young v. United States*, 942 F.3d 349, 351-52 (7th Cir. 2019).  The Seventh Circuit indicated in *Young* that a pro se inmate should typically be afforded at least until the summary judgment phase of a case to provide the affidavit.  Defendant

Taylor sought dismissal immediately after the initial review of the case under § 1915A, and he sought dismissal pursuant to Rule 12(b)(6). As such, Taylor's Motion must be denied.[5]

In sum, the Motion for Summary Judgment (Doc. 49) on the issue of exhaustion is denied on behalf of all defendants (Chadderton, IDOC, and Dr. Taylor), and Dr. Taylor's Motion to Dismiss (Doc. 45) is also denied. Given that there are genuine disputes about how many grievances were submitted in April or May of 2023, and the fate those grievances met in the grievance process, the Court cannot grant summary judgment at this time. If the Defendants wish to request a hearing to present further evidence on the issue of exhaustion, they may do so within 14 days by filing a written notice of their desire for a hearing.

## DISPOSITION

Dr. Taylor's Motion to Dismiss (Doc. 45) is **DENIED**.

Defendants' Motion for Summary Judgment on the issue of exhaustion (Docs. 49, 62) are **DENIED**. Defendants shall have **14 days** to request a Pavey hearing. If they do not request a hearing within 14 days, this matter will be advanced to merits discovery and the exhaustion issue will be treated as completely resolved by this denial order.

---

[5] The Court also notes that Dr. Taylor did not seek an extension of the October 7, 2024, deadline (Doc. 33) to file a motion for summary judgment on the issue of exhaustion in this case while his motion to dismiss was pending, and he only recently filed a "joinder" (Doc. 62) rather than an appropriate motion to join with the other Defendants' exhaustion motion after apparently realizing the motion to dismiss would not eliminate all claims against him. It would have been preferable for Dr. Taylor to have taken both of these actions to make it obvious for Plaintiff that he was pursuing exhaustion. Ultimately, these oversights do not matter much because the arguments for Chadderton and Dr. Taylor are virtually identical, and Plaintiff was able to adequately respond on the issue of exhaustion without knowing whether or not Dr. Taylor was explicitly raising it. As such, the Court will allow Dr. Taylor's late joinder of the motion (Doc. 49).

**IT IS SO ORDERED.**

Dated: March 4, 2025

<u>*s/ David W. Dugan*</u><br>
DAVID W. DUGAN<br>
United States District Judge